UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEON COLEMAN,

       Plaintiff,                           Civil Action No. 12-10099

v.                                      Hon. Mark A. Goldsmith
                                      Mag. Judge Laurie J. Michelson

M. GULLET, *et al.*,

       Defendants.

_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS BAILEY, BERGH, CRISENBERY, GIDLEY, AND PEREA'S MOTIONS FOR SUMMARY JUDGMENT [20, 26]; TO DISMISS SMITH AND DENY AS MOOT SMITH'S MOTION FOR SUMMARY JUDGMENT [22]; TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [34]; AND TO DENY OTHER MOTIONS [38, 42, 46] AS MOOT

When Plaintiff Deon Coleman was incarcerated over a year ago, he had several bodily injuries including a broken right ankle set in a cast. Plaintiff says that his right-ankle injury is still not fully healed and causes him pain. Plaintiff maintains that the entities named in this suit — twenty of them — each contributed to his continued right-ankle problems. Healthcare professionals at three Michigan Department of Corrections facilities have provided Plaintiff some treatment for his right ankle. But Plaintiff's complaint tests the sufficiency of this treatment: he says that the medical care has been so inadequate as to have violated the Eighth Amendment's proscription on "cruel and unusual punishments."

Before the Court are summary judgment motions filed by six Defendants: Heather Bailey, David Bergh, Judy Crisenbery, Lori Gidley, Felipe Perea, and Dorene Smith. As detailed below, Plaintiff's failure to fully exhaust his administrative remedies presently bars Plaintiff's claims against five of these Defendants. This procedural requirement may also bar Plaintiff's claims

against Smith, but the Court believes the more straightforward route is to dismiss those claims as insufficiently pled.  For these reasons and those that follow, Gidley, Bailey, Bergh and Crisenbery's Motion for Summary Judgment (ECF No. 20) and Felipe Perea's Motion for Summary Judgment (ECF No. 26) should be GRANTED; Dorene Smith should be DISMISSED pursuant to 28 U.S.C. § 1915(e), and, therefore, Smith's Motion for Summary Judgment (ECF No. 22) should be DENIED AS MOOT.

## I. BACKGROUND

### A. Plaintiff's Allegations

Plaintiff's Complaint provides plenty of legal conclusions but virtually no factual narrative.  As such, the following summary is based on Plaintiff's summary judgment responses as well as some of the attachments to the Complaint.

Plaintiff says that he was incarcerated with a cast on right leg and that it remained for six months. (ECF No. 1, Compl. at Pg ID 5-6.)  He states that he has two pins "connecting to [his] ankle": one is broken and the other "feels" broken and is growing into his bone.  (Compl. at Pg ID 5.)  He explains that the "gravam[e]n" of his case is that followup surgery was scheduled but not completed prior to incarceration, that a broken pin is growing in his foot, and that his condition is urgent and "may produce death, degeneration, or extreme pain."  (*Id.*)  Plaintiff further states that "even a lay person would see the need [for] a doctor[']s intervention."  (*Id.*)  Plaintiff lists legal theories of gross negligence, malpractice, "forgery," "fraud," deliberate indifference under the Eighth Amendment, and "misuse of power."  (*Id.*)  Plaintiff's Complaint names 20 Defendants. (Compl. at Pg ID 6.)

Plaintiff arrived at the Charles Egeler Reception and Guidance Center ("RGC") on July 8,

2011. (ECF No. 36, Pl.'s Resp. to Crisenberry's Mot. Summ. J. at 1 (Pg ID 369).) It appears that two of the presently moving Defendants, Dorene Smith, a nurse, and Judy Crisenberry, also a nurse, worked at RGC while Plaintiff resided there. (*See* ECF No. 35, Pl.'s Resp. to Smith's Mot. Summ. J., Ex. B (Pg ID 359-60).) Plaintiff asserts that Smith, along with Physicians Assistant "Morris," committed a "criminal act" and engaged in "obvious [r]etaliation" for a grievance Plaintiff filed in connection with an emergency room visit in mid-July 2011. (Pl.'s Resp. to Smith's Mot. Summ. J. at 1 (Pg ID 351).) The "criminal act" of "forgery and fraud" that Plaintiff refers to is Smith's alleged act of falsely quoting Plaintiff on a medical release. (*See* Compl. at ECF Pg ID 5; Pl.'s Resp. to Smith's Mot. Summ. J. at 1.) Plaintiff maintains that Smith "knew if [she] and . . . Morris could formulate a condition to make sure [I] would never receive treatment it would be justified to transfer [me] from [their] supervision . . . ." (Pl.'s Resp. to Smith's Mot. Summ. J. at 1.) As for Crisenbery, Plaintiff asserts that she knew or ignored Smith and Morris' "crime of forgery and fraud." (Pl.'s Resp. to Crisenbery's Mot. Summ. J. at 1.) Plaintiff also faults Crisenbery for prescribing the pain medication Tegretol (which, says Plaintiff, causes "a wide variety of side effect[s]") and for refusing to send Plaintiff "to a ortho-specialist for [a] broken pin inside of [my] ankle-foot [and] multiple fractures viewed [on] a x-ray . . . ." (Pl.'s Resp. to Crisenbery's Mot. Summ. J. at 3 (Pg ID 371).)

Plaintiff was transferred to Mound Correctional Facility ("NRF") on or around August 18, 2011. (*See* Compl. at ECF Pg ID 7, Pg ID 25.) Among the moving Defendants, it appears that only Defendant Felipe Perea worked at NRF during Plaintiff's stay there. (*See* Compl. at ECF Pg ID 7.) Perea, then the grievance coordinator at NRF, allegedly "strategically blocked and procedurally intercepted" Plaintiff's request for a Step II grievance form from his prior facility, RGC. (*See* Pl.'s Resp. to Crisenbery's Mot. Summ. J. at 1.) Plaintiff explains that on August 20, 2011 he sent a

3

request to Perea for a Step II grievance form but Perea responded that Plaintiff would have to request the form from RGC. (ECF No. 33, Pl.'s Resp. to Perea's Mot. Summ. J. at 1.) By the time Plaintiff made the request and received the form from his prior facility it was September 13, 2011. (*Id.*) The Step II appeal, however, was due on September 7, 2011. (ECF No. 35, Pl.'s Resp. to Smith's Mot. Summ. J. at ECF Pg ID 355.)

Plaintiff was transferred to Thumb Correctional Facility on or around November 9, 2011. (*See* Compl. at ECF Pg ID 7.) It appears that the following moving Defendants worked at TCF during the relevant time period: Health Unit Manager Heather Bailey, Deputy Warden Lori Gidley, and Warden David Bergh. (*See* Compl. at ECF Pg ID 7, 52-55.) The record also reflects that Defendant Smith has been working at TCF since at least May 2012. (*See e.g.*, ECF No. 36, Pl.'s Resp. to Bailey's Mot. Summ. J., Ex H. at ECF Pg ID 406.) Plaintiff's Complaint sets forth little or no factual allegations regarding how Bailey, Bergh, or Gidley were individually deliberately indifferent to his medical needs. (*See* Compl. at ECF Pg ID 7.) Plaintiff has filed no summary judgment response to Gidley and Bergh's motions. As to Bailey, Plaintiff's response asserts, in part,

> Here's the conduct of defendant Bailey[:] it wasn't until incompetent Dr. Kersig, [a.k.a.] Dr. Kilaru[,] Plaintiff's doctor from NRF[,] arrived that greatly changed and influence[d] Bailey's supervisory methods. Dr. Kilaru has always [told me] "it's OK stop babying it . . . walk on it, it will get better."

(ECF No. 36, Pl.'s Resp. to Bailey's Mot. Summ. J. at 1 (Pg ID 389).) Plaintiff also appears to claim that Bailey permitted another medical-staff member to discuss one of Plaintiff's medical grievances over the phone (and thus confidential statements were made in earshot of other prisoners or officers), and allowed three of her staff members to falsely accuse Plaintiff of walking without his crutches. (*Id.*)

4

### B. Plaintiff's Grievances

A review of the attachments to Plaintiff's Complaint, Defendants' summary judgment motions, and Plaintiff's responses to those motions evidence that Plaintiff filed eight grievances prior to initiating this lawsuit. Three were filed while Plaintiff was at RGC, two while Plaintiff was at NRF, and three more at TCF.

*RGC-2011-07-1076-12F.* It appears Plaintiff filed this grievance sometime in mid-to-late July 2011. Defendant Smith's August 5, 2011 response provides,

> Grievant arrived at RGC through the intake on 7/8/11 with verified Ultram. On 7/11/11 the grievant was evaluated by the Medical Provider (MP) and an order was written for Naprosyn therapy. On 7/14/11 the grievant was seen at Duane Waters Health Center Emergency Room . . . and orders were written for Tylenol . . . . Per electronic medical record . . . the grievant had an x-ray of the right ankle and it [was] noted "[r]educed fractures, incompletely healed." On 7/25/11 the Naprosyn therapy was reordered. Per the expertise and experience of the MP[,] a . . . consult for [o]rthopedic follow up can be addressed at the next site.

(Compl. at Pg ID 14.) Her response concludes, "Grievant has and will continue to receive all care medically necessary." (*Id.*) The Step I response was reviewed by Defendant Crisenbery. (*Id.*) Nothing in the record suggests that Plaintiff exhausted this grievance through Step III prior to filing this lawsuit.

*RGC-2011-07-1020-12F.* Plaintiff also filed this grievance sometime in mid-to-late July 2011. Smith completed a Step I response on August 5, 2011. (Compl. at Pg ID 15.) Smith provided virtually the same response as she gave to the RGC-2011-07-1076-12F grievance but also stated that on July 19 and 28, and on August 2, 2011, "the grievant [was] counseled by nursing to remain non-weight bearing on the right casted ankle." (*Id.*) The Step I response was reviewed by Crisenbery. (*Id.*) Nothing in the record suggests that Plaintiff exhausted this grievance through Step III prior to

5

filing this lawsuit.

*RGC-2011-08-1158-12D*. Plaintiff completed this grievance on August 2, 2011 and asserted that he "tried to get Ms. Smith to help [and] got no[]where," and that he had "seen [Physicians Assistant] Morris and got the same answer." (*See* ECF No. 33, Pl.'s Resp. to Perea's Mot. Summ. J., Ex. A, ECF Pg ID 335.) He further grieved,

> This grievance is against MDOC RGC health care and P.A. Morris.
> I have proof he committed a crime of forgery. He signed my name
> on [July 28, 2011]. To release responsibility of the MDOC. This is
> a First Amendment claim of retaliation. . . . I'm suing you P.A.
> Morris in you personal and professional capacity . . . .

(*Id.*) As noted, on August 18, 2011, Plaintiff was transferred to NRF. On or around August 20, 2011, Plaintiff requested a Step II grievance form for the RGC-2011-08-1158-12D grievance from Defendant Perea. (Pl.'s Resp. to Perea's Mot. Summ. J. at 1.) It appears that on or around August 23, 2011, Perea responded that Plaintiff needed to, pursuant to an MDOC policy directive, request a Step II grievance form from someone else: the grievance coordinator at his prior facility, RGC. (*See* Pl.'s Resp. to Perea's Mot. Summ. J. at 1; Pl.'s Resp. to Smith's Mot. Summ. J. at Pg ID 354.) Plaintiff suggests that he made that request on August 24, 2011 but did not receive the appeal form from RGC until September 13, 2011. (*See* Pl.'s Resp. to Perea's Mot. Summ. J. at 1.) He implies that this was problematic because the appeal due-date was September 7, 2011. (*See* Pl.'s Resp. to Smith's Mot. Summ. J. at Pg ID 355.) On October 4, 2011, the grievance coordinator at RGC denied the grievance as untimely. (Pl.'s Resp. to Smith's Mot. Summ. J. at Pg ID 355.) Nothing in the record suggests that Plaintiff exhausted this grievance through Step III prior to filing this lawsuit.

*NRF-2011-09-0725-28B*.  Plaintiff completed this grievance on September 15, 2011. (Compl. at Pg ID 24.)  It states, in part, that Plaintiff "saw Dr. Reeves today," and that "[t]he ineffectiveness of [M]DOC health care is appalling.  Dr. Reeves[,] for your involvement[,] I'm suing you . . . and others and your medical provider as well."  (*Id.*)  Plaintiff filed a Step II appeal on September 28, 2011.  (*Id.* at Pg ID 25.)  The appeal names no one specifically, stating only that the "healthcare has been horrible" and that "a lay person can recognize the need for a specialist."  (*Id.*) It appears that Plaintiff exhausted this grievance: on January 12, 2012, the Bureau of Health Care Services denied his Step III appeal.  (ECF No. 20, Gidley's Mot. Summ. J. at ECF Pg ID 263.)[1]

*NRF-2011-09-0726-28B*.  Plaintiff also completed this grievance on September 15, 2011. (Compl. at Pg ID 26.)  Plaintiff grieved "healthcare and Dr. Reeves" stating that he had only received Tegretol therapy and asserting deliberate indifference to his medical needs.  (*Id.*)  On September 28, 2011, Plaintiff appealed to Step II; the appeal stated, in part, "Inmate was told by medical staff at RGC that my ankle surg[ery] . . . would be handled here. . . . [T]he situation over [the past four] months has gotten worse.  What must be done for relief?"  (Compl. at Pg ID 27.)  It appears that Plaintiff also exhausted this grievance: on January 10, 2012, the Bureau of Health Care Services denied the Step III appeal.  (ECF No. 20, Gidley's Mot. Summ. J. at Pg ID 270.)

*TCF 2011-12-00766-012D*.  Plaintiff completed this grievance on December 1, 2011. (Compl. at Pg ID 49.)  It describes, in part, Plaintiff's inability to get certain pain medication or an orthopedic consult:

> I met with [Physicians Assistant] Schuitman, but she was unable to
> provide me herself with sufficient pain medication or schedule [an]

---

[1]Because it is unnecessary to resolve the pending motions, the Court defers ruling on whether Plaintiff exhausted NRF-2011-09-0725-28B or NRF-2011-09-0726-28B prior to filing this lawsuit.

> [orthopedic] visit without a doctor's consent. . . .  Today . . . I saw
> [Physicians Assistant] Couturie and she's unable to provide pain
> medication or [orthopedic] visit without a doctor's consent. . . . [T]he
> doctor who PA Shuitman and PA Couturie report to should not put
> finance before health.  This is horrific, and medical madness to deny
> me Ultram.

(*Id.*)  On December 5, 2011, non-moving Defendant McLean responded in part:

> He came to TCF from NRF, and while there, he was approved for,
> and went to, an orthopedic visit on 10-31-11.  His cast was removed
> on this date, and no other follow up (to our knowledge) was
> scheduled.  TCF is attempting to obtain records from OR and
> orthopedics so we can move forward with a treatment plan.  After
> being asked multiple times (according to chart documentation) to not
> bear weight on this limb, the prisoner was seen on 12-2-11 by RMD
> Coleman and PA Couturier leaving [healthcare] carrying his crutches,
> and bearing weight on the limb.  Ultram was requested by TCF, but
> deferred by the RMO on 11-21-11 pending the obtaining of all
> records related to the inmate's past care.  We are continually working
> on this, and the inmate is aware.  He is on Tegretol for pain currently,
> but Ultram has been deferr[e]d at this time.

(Compl. at Pg ID 40.)  Bailey reviewed McLean's grievance response.  (*Id.*)  On December 8, 2011,

Plaintiff appealed, asserting in part that he wanted to see "a video of me 'ever' carrying my

crutches."  (Compl. at Pg ID 51.)  Defendant Warden David Bergh denied the appeal on December

29, 2011 stating that the "facilities video camera system is considered confidential for institutional

security."  (Compl. at Pg ID 52.)  Nothing in the record suggests that Plaintiff exhausted this

grievance through Step III prior to filing this lawsuit.

*TCF 2011-12-007800-12E.*  Plaintiff completed this grievance sometime in December 2011.

Although the completed Step I form is absent from the record, it appears that Plaintiff grieved

McLean because she improperly disclosed confidential medical information by interviewing him

about another grievance over the phone, and because she stated that she saw Plaintiff carrying his

crutches.  (*See* Compl. at Pg ID 45.)  On December 19, 2011, Defendant Bailey responded in part

as follows:

> Based on the visualization of the inmate by [three] medical professionals[,] it was determined that inmate Coleman did not need the crutches.  Mr. Coleman should refrain from making veiled threatening remarks in a grievance.  Per PD 03.02.130, this is reason for rejection of a grievance.

(Compl. at Pg ID 45.)  Bailey acknowledged, however, "Grievances should be conducted over the phone only if an inmate no longer lives at the originating facility.  [RN McLean] has been made aware of this." (*Id.*)  Nothing in the record suggests that Plaintiff exhausted this grievance through Step III prior to filing this lawsuit.

*TCF 2011-12-00809-028A.*  Plaintiff completed this grievance on December 20, 2011.

(Comp. at Pg ID 53.)  Plaintiff grieved that TCF "healthcare" had given him "conflicting" messages:

> PA Coutu[r]ire told me to remain non-weight [bearing] on my surgically repaired ankle.  [And] I was told that I was viewed [bearing weight on it which] is why I can't receive pain medication.  Even [though] PA Coutu[r]ire knew or should have known that the surgeon from [the] receiving hospital ordered me to be mobile.

(*Id.*)  Nothing in the record suggests that Plaintiff exhausted this grievance through Step III prior to filing this lawsuit.

## II. ANALYSIS

Defendants' primary basis for summary judgment is non-exhaustion.  They also point out that "the text of Plaintiff's Complaint lacks any specific reference to [the] named Defendants.  Nowhere in the Complaint does Plaintiff himself describe any specific action of these Defendants." (Gidley's Mot. Summ. J. at 14; *see also* Smith's Mot. Summ. J. at 5; Perea's Mot. Summ. J. at 5.)  Although both arguments may be valid, the Court rests its recommendation on exhaustion grounds for Defendants Bailey, Bergh, Crisenbery, Gidley, and Perea, and failure-to-state-a-claim grounds

9

for Defendant Smith.

### A. Defendants Bailey, Bergh, Crisenbery, Gidley, or Perea Have Shown That No Reasonable Jury Could Find that Plaintiff Exhausted Grievances Against Them

#### 1. Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001). The moving party may discharge its initial summary judgment burden by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party does so, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury, or whether the evidence is so one-sided that the moving party must prevail as a matter of law. *Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

## 2. Legal Standards Governing Exhaustion

The Prisoner Litigation Reform Act bars a civil rights action challenging prison conditions until the prisoner exhausts "such administrative remedies as are available." 42 U.S.C. § 1997e(a); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). The exhaustion requirement is justified on two grounds. First, it gives prisoners "an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." *Woodford v. Ngo*, 548 U.S. 81, 94 (2002). Additionally, the requirement "has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Jones*, 549 U.S. at 204.

The exhaustion prerequisite applies to all inmate suits about prison life, regardless of the nature of the wrong or the type of relief sought. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001) (rejecting claim that prisoner had no duty to exhaust where monetary damages could not be awarded through the administrative process; reasoning that "Congress meant to require procedural exhaustion regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible."). Moreover, the prisoner must "properly" exhaust his claims by complying with the MDOC grievance policy. *See Woodford*, 548 U.S. at 90-91 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ."); *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012) ("A grievant must undertake all steps of the MDOC process for his grievance to be considered fully exhausted. . . . [and] must adhere to any time limitations that are part of the institutional grievance policy." (citing *Jones Bey v. Johnson*, 407 F.3d 801, 803 n. 2 (6th Cir. 2005) *rev'd on other grounds by Jones v.*

11

*Bock*, 549 U.S. 199 (2007))).

It is not, however, a prisoner's burden to show that he has properly exhausted his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Rather, the failure to exhaust is an affirmative defense, *Jones*, 549 U.S. at 216, and a defendant to a prisoner suit has both the burden of production and persuasion on the issue of non-exhaustion, *Surles*, 678 F.3d at 455-56. As such, a defendant's "initial summary judgment burden is higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Surles*, 678 F.3d at 455-56 (internal quotation marks and citation omitted). "Summary judgment is appropriate only if defendants establish the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion." *Id.* (quoting *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011)).

### 3. Application

Defendants offer the affidavit of Richard Russell, the Manger of the Grievance Section of the Michigan Department of Corrections, which provides (1) that all Step III grievance appeals are recorded in a "Grievance Tracking" database, (2) that, at Russell's direction, this database was searched for Step III grievance appeals filed by Plaintiff, and (3) the search revealed only two grievances: NRF-11-09-0725-28b and NRF-11-09-0726-28b. (ECF No. 20, Gidley's Mot. Summ. J., Ex. B, Russell Aff. ¶¶ 1, 17-18.) Thus, based on Russell's affidavit, Plaintiff only exhausted grievances involving his medical treatment at NRF.

This fact, left unrebutted, is dispositive of Plaintiff's claims against Bailey, Bergh, Crisenbery, Gidley, and Perea. Three of these Defendants, Bailey, Bergh, and Gidley, are alleged to have committed misconduct at TCF. Plaintiff had not yet been transferred to TCF at the time he

12

filed the NRF grievances. Thus, the two exhausted NRF grievances cannot pertain to alleged misconduct at TCF, and, in particular, the alleged misconduct of Bailey, Bergh, or Gidley.

A similar analysis applies to Crisenbery. She worked at RGC and the two exhausted NRF grievances do not complain of conduct that occurred at RGC. Moreover, exhaustion requires compliance with MDOC policy which states, "Dates, times, places, and names of all those involved in the issue being grieved are to be included." (ECF No. 20, Gidley's Mot. Summ. J., Ex. A, MDOC Policy Directive 03.02.130, ¶ R.) The two exhausted NRF grievances, which mention "Dr. Reeves," "others," "healthcare," and Reeves' "medical provider," do not name Crisenbery. *See Solomon v. Mich. Dept. of Corr.*, No. 2:10-CV-59, 2011 WL 4479300, at *3 (Aug. 31, 2011) *report and recommendation adopted by* 2011 WL 4479407 (W.D. Mich. Sept. 27, 2011) ("A prisoner must specifically mention the involved parties in the grievance to alert the prison officials of the problems so that the prison has a chance to address the claims before they reach federal court." (citing cases)). No reasonable jury could find that the two NRF grievances gave "fair notice," *see Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003) *other principles abrogated by Jones v. Bock*, 549 U.S. 199 (2007), that Plaintiff was grieving someone at RGC, let alone Crisenbery specifically.

Finally, Perea, like Crisenbery, was not grieved in either of the two exhausted grievances — or any of the grievances of record for that matter — and, therefore, no reasonable jury could find that Plaintiff's grievances gave fair notice of his alleged misconduct: "block[ing]" Plaintiff's request for a Step II grievance form.

So the question becomes whether Plaintiff has put forth sufficient rebuttal evidence of exhaustion. The answer is no. Plaintiff has chosen not to respond to Bergh or Gidley's motion for summary judgment, and Plaintiff's response to Perea's motion does not challenge the conclusion

13

that Perea was not grieved in the two exhausted grievances.  As to Bailey, Plaintiff cites *Lawrence v. Goord*, 238 F.3d 182 (2d Cir. 2001) which held that "inmates need not exhaust their administrative remedies before bringing suit for particularized instances of retaliation."  (ECF No. 36, Pl.'s Resp. to Bailey's Mot. Summ. J. at 1 (ECF Pg ID 389).)  But *Lawrence* was vacated by the Supreme Court in view of *Porter v. Nussle*, 534 U.S. 516 (2002), and, on remand, the Second Circuit held, "[t]aking *Nussle* as our guide, we now determine that Lawrence's retaliation claim fits within the category of 'inmate suits about prison life,' and therefore must be preceded by the exhaustion of state administrative remedies available to him."  *Lawrence v. Goord*, 304 F.3d 198, 200 (2d Cir. 2002).

That leaves Crisenberry.  Plaintiff essentially asserts that he would have exhausted RGC-2011-08-1158-12D but for Perea's interference with the grievance process.  (*See* Pl.'s Resp. to Gidley's Mot. Summ. J. at 1.)  Plaintiff also apparently asserts that his Step II appeal of that grievance was improperly rejected as untimely because (1) he was transferred from RGC to NRF during the period in which he was attempting to exhaust that grievance, and (2) MDOC policy states that a grievance "shall not be rejected if there is a valid reason for the delay; e.g., transfer."  (*Id.*; *see also* Gidley's Mot. Summ. J., Ex. A, MDOC Policy Directive 03.02.130, ¶ G.4.)  But even assuming that these arguments have merit, they do not change the fact that Crisenberry was not fairly implicated by the  RGC-2011-08-1158-12D grievance.  In that grievance, Plaintiff asserted that he tried to get help from Smith and "P.A. Morris."  He also grieved,

> This grievance is against MDOC RGC health care and P.A. Morris. I have proof he committed a crime of forgery.  He signed my name on [July 28, 2011].  To release responsibility of the MDOC.  This is a First Amendment claim of retaliation. . . .  I'm suing you P.A. Morris in you personal and professional capacity . . . .

14

(ECF No. 35, Pl.'s Resp. to Smith's Mot. Summ. J. at ECF Pg ID 356.)  The Court does not believe that any reasonable jury could find that a grievance that broadly references "MDOC RGC health care" and complains of a specific act of forgery by "P.A. Morris" gives "fair notice," *see Burton*, 321 F.3d at 575, that Crisenbery had been accused of misconduct.

This same conclusion also seems to apply to Defendant Smith.  But here, the exhaustion question is closer because the RGC-2011-08-1158-12D grievance at least states that Plaintiff spoke with Smith.  (Pl.'s Resp. to Smith's Mot. Summ. J. at ECF Pg ID 356.)  Further, Smith's signature appears on the allegedly forged medical release that is the subject of the grievance.  (Compl. at ECF Pg ID 16.)  It is possible that a reasonable jury could find that the RGC-2011-08-1158-12D grievance provided MDOC or RGC with "fair notice" as to Smith.  *Cf. Hall v. Raja*, No. 09-10933, 2010 WL 3070141 at *1-3 (E.D. Mich. Aug. 2, 2010) (holding that grievance of "medical staff" provided adequate notice of alleged wrongdoing by defendant doctor where the doctor "was the only medical provider to see the plaintiff at the prison before the plaintiff filed the grievance" and the prison official responding to the grievance recognized the doctor's involvement).  That conclusion, coupled with Plaintiff's unrebutted allegations that Perea's conduct or Plaintiff's transfer from RGC to NRF excuses his failure to timely exhaust this grievance, could warrant a finding that a genuine issue of material fact exists as to whether Plaintiff exhausted his claims against Smith.  *Cf. Surles*, 678 F.3d at 457 (finding a dispute over material fact existed "as to whether Defendants or other MDOC employees prevented Surles from filing grievances and exhausting his administrative remedies" where, in opposing the defendants motion for summary judgment, Surles asserted that an officer refused to process grievances and "Defendants presented no proof that they did not interfere with Surles's ability to exhaust his administrative remedies").  The Court, however, need not decide

this issue; an examination of Plaintiff's allegations against Smith presents a firmer basis for dismissal.[2]

### B. Plaintiff Has Not Stated A Claim Upon Which Relief May Be Granted As to Defendant Smith

#### 1. Standards Governing Dismissal Under 28 U.S.C. § 1915(e)(2)

"Because plaintiff is proceeding in forma pauperis, 28 U.S.C. § 1915(e)(2) applies to [P]laintiff's § 1983 action." *Moniz v. Hines*, 92 F. App'x 208, 210 (6th Cir. 2004); *see also Brown v. Bargery*, 207 F.3d 863, 865-66 (6th Cir. 2000). Section 1915(e) provides, "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). Thus, the provision "is applicable throughout the entire litigation process," and "[a] case that may not initially appear to meet § 1915(e)(2) may be dismissed at a future date should it become apparent that the case satisfies this section." *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997) *abrogated on other grounds by Jones v. Bock*, 549 U.S. 109, 205 (2007). Federal Rule of Civil Procedure 12(b)(6) standards govern dismissal for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii). *Hill v. Lapin*, 630 F.3d 468, 470-71 (6th Cir. 2010).

To survive a motion to dismiss brought pursuant to Rule 12(b)(6), a complaint must contain "enough factual matter" that, when accepted as true, "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In evaluating whether a claim is

---

[2]The Court notes, however, that the moving Defendants' focus on the two exhausted NRF grievances is too narrow. The remaining Defendants are encouraged to consider cases like *Hall v. Raja*, No. 09-10933, 2010 WL 3070141 (E.D. Mich. Aug. 2, 2010) and *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012).

facially plausible, a court must accept as true well-pled but seemingly "unrealistic or nonsensical" allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 681 (2009); *Twombly*, 550 U.S. at 556. Legal conclusions, however, are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* The court can then turn to whether the remaining allegations plausibly give rise to an entitlement to relief. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556)). The plausibility standard is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Finally, in applying the Rule 12(b)(6) standards to a complaint drafted by a *pro se* plaintiff, a court must be mindful that allegations in the complaint are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).[3]

---

[3]In deciding to invoke 28 U.S.C. § 1915(e)(2), the Court is mindful that Defendant Smith moved for summary judgment as opposed to filing a motion to dismiss. But the Court believes that Smith pursued this route because she needed to rely on evidence outside the pleadings to support her exhaustion argument (e.g., Russell's affidavit). In fact, in presenting alternative arguments to exhaustion, Smith focuses on Plaintiff's Complaint and does not rely on any summary judgment evidence:

> Defendant Smith is entitled to summary judgment on the merits as well as to qualified immunity. As discussed above, the text of Plaintiff's Complaint lacks any specific reference to Defendant Smith that could even arguably support a deliberate indifference claim. *To state a claim under § 1983*, a plaintiff must *allege* the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.

(ECF No. 22, Smith's Mot. Summ. J. at 5 (emphases added).) Thus, the Court believes that it is

### 2. Application

Plaintiff's Complaint does not state claim upon which relief may be granted against Smith. Plaintiff pleads that followup surgery was scheduled but not completed prior to incarceration, that he has a broken pin growing in his foot, and that his right-ankle condition is urgent and "may produce death, degeneration, or extreme pain." (Compl. at ECF Pg ID 5.) Based on the Complaint, the Court fully appreciates that Plaintiff believes that the medical treatment he has received since his incarceration is inadequate — so deficient, in fact, as to rise to the level of cruel and unusual punishment. But as to Smith's individual responsibility for Plaintiff's condition, the Court is at a loss. Plaintiff merely states, "Dorene Smith . . . committed retaliation, deliberate indifference, gross negligence, and [an] A.D.A. rights [violation] under Title II [of the] Act." (Compl. at ECF Pg ID 7.) These are legal conclusions and they do not permit the Court to infer how Smith personally violated Plaintiff's rights secured by federal or state law. Plaintiff's "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" do not state a claim for relief. *See Iqbal*, 556 U.S. at 678.

---

appropriate to exercise its discretion to dismiss Smith for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2). *Cf. Davis v. Michigan Dept. of Corr.*, 746 F. Supp. 662, 664 (E.D. Mich. 1990) ("[W]hen a Rule 56 motion for summary judgment can be granted without considering extraneous materials—such as affidavits—the district court has the discretion to view such a motion as a Rule 12 motion to dismiss."). This is especially so where Plaintiff is attempting to engage in discovery and a summary judgment ruling would invite a ripeness challenge by Plaintiff, which, in turn, would necessitate a determination of whether Plaintiff's discovery is necessary to rebut Smith's defense of qualified immunity. *See McBride v. City of Detroit*, No. 07-12794, 2007 WL 4201134, at *2 (E.D. Mich. Nov. 28, 2007) ("As there has been virtually no discovery to date, nor any discovery materials offered in support or defense of the current motion, the Court finds that this case is not ripe for summary judgment. Therefore, Defendant's motion will be addressed solely as a motion to dismiss under Fed. R. Civ. P. 12(b)(6)."); *Crawford-El v. Britton*, 523 U.S. 574, 598 n. 14 (1998) ("[L]imited discovery may sometimes be necessary before the district court can resolve a motion for summary judgment based on qualified immunity.").

Perhaps recognizing that his Complaint is deficient, Plaintiff has provided some factual allegations specific to Smith in his response to her summary judgment motion. In particular, Plaintiff asserts that Smith (and non-moving Defendant Morris) forged a medical release. In a section of the release for the "care provider" to complete, the form provides,

> Deon Coleman presented at . . . RGC with P.A. Morris and was informed . . . to remain non-weight bearing on right foot. Despite encouragement to accept treatment as described above, the patient refused recommended care for this condition. In view of the patient's refusal, it is recommended that inmate . . . use crutches as instructed and to remain non[-]weight bearing on [his right] ankle.

(Compl. at Pg ID 16.) Morris and Smith's signatures appear below this statement. (*Id.*) In a second section to be completed by the patient, the release provides:

> This is to certify that I, Coleman, Deon, decline treatment offered to me as stated above, and as explained to me by the care provider(s) identified above, knowing that this refusal to accept treatment is against the advice of the attending physician or physician assistant and medical director. I acknowledge that I have been informed of the risk(s) involved and hereby release the attending physician or physician assistant, the facility, and all its employees from all responsibility for any ill effects which may result from my decision. Reasons for refusal and/or other remarks: "Because I don't wanna."

(*Id.*) This section is not signed by Plaintiff, however; instead it is signed by Morris. Plaintiff asserts that the form was completed without his consent and that Smith wrote the statement "Because I don't wanna" without his authorization. (ECF No. 35, Pl.'s Resp. to Smith's Mot. Summ. J. at 1.) Plaintiff says that Smith's forgery was a "criminal act" and "obvious [r]etaliation." (*Id.*) The Court will construe the allegations contained in Plaintiff's response to Smith's motion for summary judgment as a supplement to the Complaint. *See JAT, Inc. v. Nat'l City Bank of Midwest*, 460 F. Supp. 2d 812, 818 (E.D. Mich. 2006) ("Where Plaintiffs are not attempting to plead new causes of action against Defendants, but are merely providing additional support to their initial pleading, this

19

Court is inclined to allow an implicit motion to amend at this stage."); *Dimov v. EMC Mortg. Corp.*, No. 1:09-CV-211, 2010 WL 2506717, at *1 n.1, 2 (E.D. Tenn. June 17, 2010) ("In his response to [Defendant's] motion to dismiss, Plaintiff supplemented factual allegations in the complaint with some additional details . . . . As discussed below, given the liberal pleading standard in cases filed pro se, the Court will consider these additional factual allegations and construe them, along with the amended complaint, in the light most favorable to Plaintiff."); *but see Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 521 (6th Cir. 2008) ("Ordinarily, when the omission of a critical allegation in a complaint is highlighted by a defendant's motion to dismiss, the appropriate method for adding new factual allegations is to request leave to amend the complaint in conjunction with responding to the motion to dismiss.").

Even supplemented, the Complaint still fails to state a claim against Smith upon which relief may be granted. To succeed on a First Amendment retaliation claim, Plaintiff must plead factual allegations plausibly satisfying three elements: (1) that he engaged in protected conduct, (2) that Smith took "an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct," and (3) that "the adverse action was taken at least in part because of the exercise of the protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 699 (6th Cir. 2005) (citing *Thaddeus–X v. Blatter*, 175 F.3d 378, 393 (6th Cir. 1999)). Plaintiff states that Smith retaliated because he filed a grievance in connection with an emergency room visit. (Pl.'s Resp. to Smith's Mot. Summ. J. at 1.) Filing a grievance is undoubtedly protected First Amendment conduct. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). The Court therefore turns to Plaintiff's allegations supporting the second and third elements.

The threshold for an action to be considered adverse is low and the requirement is "intended

20

to weed out only inconsequential actions." *Thaddeus-X*, 175 F.3d at 398. Nonetheless, Plaintiff must still plead facts permitting the court to reasonably infer that the alleged retaliatory act would deter a person of "ordinary firmness" from engaging in conduct protected by the First Amendment. *See Mezibov v. Allen*, 411 F.3d 712, 721 (6th Cir. 2005). In this case, the alleged adverse action is Smith's forgery of a medical release. Plaintiff says that the executed release precludes future medical treatment. (Pl.'s Resp. to Smith's Mot. Summ. J. at 1-2 ("Smith . . . knew if [she] and . . . Morris could formulate a condition to make sure [I] would never receive treatment it would be justified to transfer [me] from [their] supervision . . . . Smith has full knowledge of her actions and what it would mean for future relief. [I] would be denied as if [I] refused treatment causing a never ending delay [for treatment during my] incarceration . . . .").) But the plain language of the form merely releases MDOC employees from "all responsibility for any ill effects" that result from the inmate's "decision" to "decline treatment offered to [the patient] as stated above [in the release]" (in this case, remaining non-weight bearing on the right foot). It says nothing about future medical treatment. Nor has Plaintiff pled that any MDOC medical professional, administrator, or Defendant in this case would interpret, or has interpreted, the release to do more than it states, i.e., that MDOC employees rely on a patient's prior medical release to refuse any future medical treatment. Plaintiff has not even pled that completed medical releases are reviewed by a healthcare provider when an inmate subsequently seeks treatment.[4] Plaintiff therefore has merely conclusorily assumed that the forged medical release has the effect of precluding future treatment; as such, he has not adequately

---

[4]In fact, in an August 5, 2011 grievance response completed by Smith, Smith noted that Plaintiff was seen on August 2, 2011 (after the release was allegedly forged) and, moreover, she stated, with Crisenbery's approval, "Grievant . . . will continue to receive all care medically necessary." (Compl. at ECF Pg ID 15.)

21

pled facts allowing this court to reasonably infer how a forged release would deter a person of "ordinary firmness" from engaging First Amendment conduct.

And even if Plaintiff has adequately pled the adverse-action element, he has not sufficiently pled causation. Reading Plaintiff's summary judgment response liberally, Plaintiff asserts that Smith retaliated because she considered Plaintiff a "nuisance" after he wrote grievances on July 19 and July 25, 2011 regarding an emergency-room visit. (*See* Pl.'s Resp. to Smith's Mot. Summ. J. at 1.) But other than timing, nothing in this allegation suggests any connection between the protected conduct and the alleged retaliatory act. The case law on whether temporal proximity, without more, permits an inference of causation is not entirely uniform. *Compare Newton v. Ohio Dept. of Rehab. & Correction-Toledo Corr. Inst.*, No. 11-3681, 2012 WL 3631493, at *8 (6th Cir. Aug. 23, 2012) (stating "temporal proximity alone may not support an inference of retaliatory discrimination absent other compelling evidence" and finding that one month proximity between protected conduct and retaliation, without "any additional evidence," was not sufficient to support a retaliation claim at summary judgment); *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010) ("Although this court has concluded that evidence of temporal proximity between filing grievances and the adverse action provides some support for establishing retaliatory motive, it has been reluctant to find that such evidence alone establishes retaliatory motive."); *and Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 550 (6th Cir. 2008) ("[T]emporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence.'" (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000))) *with Akers v. County of Bell*, No. 10-5513, 2012 WL 3518561, at *4 (6th Cir. Aug. 15, 2012) ("This Court has found a causal link when the temporal gap is short, generally fewer than six months."); *Mickey v. Zeidler Tool & Die*

*Co.*, 516 F.3d 516, 524 (6th Cir. 2008) ("Although *Nguyen* did however note that other earlier cases could be read as having 'rejected the proposition that temporal proximity is enough,' . . . *Nguyen* reads these cases expansively, and none squarely stands for the proposition that temporal proximity alone may never show a causal connection."); *and DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004) (noting that "in certain distinct cases where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise.").

Without deciding whether close temporal proximity alone can ever be sufficient, on the allegations of this case, the Court finds that Plaintiff has not sufficient pled causation. *See Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 178 (3d Cir. 1997) ("It is important to emphasize that it is causation, not temporal proximity itself, that is an element of plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn."). First, Plaintiff has not pled that Smith was even aware of the July 19 and July 25, 2011 grievances when she allegedly forged the release on July 28, 2011. Plaintiff has not pled when the grievance coordinator received these grievances, or when Smith became aware of them. The Step I grievances do not appear in the record. Plaintiff does direct the Court's attention to the two Step I grievance responses. (*See* Pl.'s Resp. to Smith's Mot. Summ. J. at ECF Pg ID 359-60.) But the responses show that Smith did not respond until August 5, 2011 — a week after the alleged retaliatory conduct. Thus, while it is possible that Smith was aware of the grievances prior to July 28, 2011, given that Smith did not respond until a week later, it seems just as likely that she was not. Second, Plaintiff has not pled that the July 19 and July 25, 2011 grievances were even filed against Smith. And the fact that Smith, as opposed to some other officer, responded to the grievances indicates that she was

23

not grieved.  (*See* ECF No. 20, Gidley's Mot. Summ. J., Ex. A, MDOC Policy Directive 03.02.130 ¶ U ("[S]taff who may be involved in the issue being grieved shall not participate in any capacity in the grievance investigation, review, or response . . . ."); ¶ X ("The respondent shall generally be the supervisor of the person being grieved . . . .").)  Third, Smith's grievance responses indicate that she did not have a motive to retaliate: she provided, "Grievant . . . will continue to receive all care medically necessary."  (Compl. at ECF Pg ID 14, 15.)  In sum, the Court is arguably left with a plausible but not probable inference of temporal proximity on the one hand and the following inferences contrary to a retaliatory motive on the other: (1) Smith was not among the individuals grieved on July 19 and July 25, 2011 and (2) Smith's grievance responses indicate that Plaintiff would continue to receive medical treatment.  The balance does not permit the Court to reasonably infer that Smith forged the medical release on July 28, 2011 at least in part because Plaintiff filed grievances on July 19 and July 25, 2011 grievances.  As such, Plaintiff has not carried his claim that Smith was motivated to retaliate in part because of protected First Amendment conduct "across the line from conceivable to plausible."  *See Twombly*, 550 U.S. at 570.

Accordingly, Plaintiff's claims against Smith should be dismissed for failure to state a claim upon which relief may be granted.

### E.  Plaintiff's Motion for Summary Judgment

Plaintiff has, in two pages and without supporting evidence, again moved for summary judgment. (ECF No. 34, Pl.'s 2d Mot. Summ. J.)  In an earlier Report and Recommendation denying Plaintiff's first summary judgment motion, this Court explained:

> The Federal Rules of Civil Procedure require that this type of motion be served on all applicable defendants.  Fed. R. Civ. P. 5(a)(1)(D). As discussed above, none of the Defendants had even been served with the Complaint at the time Plaintiff filed this Motion.  Nor does

24

the Motion contain a proof of service indicating that Plaintiff served it on the Defendants. Thus, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment be DENIED WITHOUT PREJUDICE to being refiled at a more appropriate time – i.e., after the Defendants have been served and have an opportunity to respond. Prior to any refiling, the Court trusts Plaintiff will review Federal Rule of Civil Procedure 56 which governs motions for summary judgment. *See, e.g.*, Fed. R. Civ. P. 56(a) (explaining the standard for granting a motion for summary judgment – "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

(ECF No. 17, R. & R. to Deny Without Prejudice Pl.'s Mot. Summ. J.) District Judge Mark A. Goldsmith accepted this recommendation (ECF No. 30, Order Adopting R & R), and circumstances have not materially changed since then. MDOC remains dismissed and 13 Defendants — Coleman, Corizon (listed as V.H.S. in the Complaint), Courturier, Gullet, Kilaru (listed as Kersig), Lee (listed as "doctor at receiving hospital"), Lambert, McLean, Morris, Morrissey, Reeves, "Unidentified Dr.," and Wilcot — remain unserved. As for the now-served Defendants, the Court recommends that they be dismissed. Accordingly, Plaintiff's second motion for summary judgment should again be denied.

## III. CONCLUSION AND RECOMMENDATION

For reasons set forth above, Gidley, Bailey, Bergh and Crisenbery's Motion for Summary Judgment (ECF No. 20) and Felipe Perea's Motion for Summary Judgment (ECF No. 26) should be GRANTED; Dorene Smith should be DISMISSED pursuant to 28 U.S.C. § 1915(e), and, therefore, Smith's Motion for Summary Judgment (ECF No. 22) should be DENIED AS MOOT.

In view of this Court's recommendation to dismiss Bailey, Bergh, Crisenbery, Gidley, Perea, and Smith, the Court further recommends that (1) Defendants Bailey, Bergh, and Crisenbery's Motion to Stay Discovery (ECF No. 42) be DENIED AS MOOT; (2) Plaintiff's Request for Default

Judgment against Bailey, Bergh, Crisenbery, and Smith (ECF No. 46) for failure to comply with discovery be DENIED AS MOOT; and (3) Plaintiff's "Request" (ECF No. 38) pursuant to Rule 11 to impose a deterrence remedy against Bailey, Crisenbery, and Smith be DENIED AS MOOT.

## IV. FILING OBJECTIONS TO THIS REPORT

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

S/Laurie J. Michelson                                   
Laurie J. Michelson
United States Magistrate Judge

Dated: September 4, 2012

**<u>PROOF OF SERVICE</u>**

The undersigned certifies that the foregoing document was served upon the parties and/or counsel of record via the Court's ECF System and/or U. S. Mail on September 4, 2012.

<u>s/Jane Johnson</u>
Case Manager to
Magistrate Judge Laurie J. Michelson

27