UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEON COLEMAN,

    Plaintiff,                                                             Civil Action No. 12-10099

v.                                                                 Hon. Mark A. Goldsmith
                                                                            Mag. Judge Laurie J. Michelson

M. GULLET, *et al.*,

    Defendants.

_____/

**OPINION AND ORDER DENYING
PLAINTIFF'S RULE 15(D) MOTIONS TO SUPPLEMENT [121, 127] AND
REPORT AND RECOMMENDATION TO DENY AS MOOT
PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION [122, 125]**

      Until recently, Plaintiff Deon Coleman's sole focus in this litigation has been the treatment (or, from his perspective, mistreatment) of his surgically repaired, but improperly healed ankle while he has been imprisoned. Plaintiff's Complaint asserted that twenty defendants, including eighteen individuals associated with the Oakland County Jail, the Michigan Department of Corrections, and Corizon Correctional Healthcare, were deliberately indifferent to his ankle condition in violation of the Eighth Amendment. He claimed, for example, that certain individuals did not remove his cast for six months, resulting in a foul odor and water-logged skin. He also alleged that even after the cast was removed, certain MDOC or Corizon employees failed to adequately treat his still unhealed and severely painful ankle. Nineteen of the twenty defendants have either been dismissed or, after considerable effort, remain unserved. Further, in a separate report and recommendation, this Court has recommended dismissal of the twentieth defendant. As such, the (ankle) claims as filed have largely been resolved.

Plaintiff, however, has recently filed two motions to supplement his Complaint pursuant to Federal Rule of Civil Procedure 15(d). (Dkt. 121, Pl.'s 1st Mot. to Supp.; Dkt. 127, Pl.'s 2d Mot. to Supp.) These motions allege wrongdoing by nine individuals associated with the Macomb Correctional Facility ("MRF")—where MDOC transferred Plaintiff about nine months after he filed this suit. (*See* Dkt. 1, Compl.; Dkt. 97, Pl.'s Mot. for Prelim. Inj. at Pg ID 1133.) Plaintiff also wants to add Aetna Life Insurance as a defendant. Among the ten proposed defendants, only Dr. Rickey Coleman was originally named in the Complaint. But he has been dismissed from this suit, and so none of the proposed supplemental claims involve any current defendant to this litigation.

Additionally, Plaintiff has recently filed two "imminent danger" motions. (*See* Dkt. 122, May 29, 2013 Not. of Imminent Danger; Dkt. 125, June 13, 2013 Not. of Imminent Danger.) These motions seek to enjoin six individuals associated with MRF from acting with deliberate indifference to an *eye* condition. None of these individuals, however, were named in the Complaint, and none were otherwise made defendants to this suit.

The Court has carefully considered Plaintiff's motions, and, for the reasons that follow, DENIES Plaintiff's motions to supplement (Dkts. 121, 127). It follows that this Court RECOMMENDS that Plaintiff's "imminent danger" motions (Dkts. 122, 125), which seek to enjoin individuals that this Court now declines to make part of this litigation, be DENIED.

## I. BACKGROUND

### A. Dismissal of the Original Defendants

Thirteen of the original twenty defendants named in this suit have been dismissed. The State of Michigan invoked sovereign immunity. (Dkt. 7, Op. and Order Dismissing State of Mich. at 3.) The Court dismissed Heather Bailey, David Bergh, Judy Crisenbery, Lori Gidley, and Felipe Perea

because Plaintiff had failed to administratively exhaust his claims against them prior to filing this suit. *Coleman v. Gullet* ("*Coleman Op. & Order*"), No. 12-10099, 2012 WL 5986679, at *2 (E.D. Mich. Nov. 29, 2012) (Goldsmith, J.); *see also Coleman v. Gullet* ("*Coleman R & R*"), No. 12-10099, 2012 WL 5986779, at *3-9 (E.D. Mich. Sept. 4, 2012) (Michelson, M.J.). The Court dismissed Dorene Smith pursuant to 28 U.S.C. § 1915(e) because the Complaint, even when supplemented with assertions made in Plaintiff's response to Smith's dispositive motion, failed to state a claim upon which relief may be granted. *Coleman Op. & Order*, 2012 WL 5986679, at *2; *see also Coleman R & R*, 2012 WL 5986779, at *9-14. Later, in resolving a motion to amend filed by Plaintiff, the Court further held that Plaintiff had not exhausted his administrative remedies against Smith. (Dkt. 100, Order Denying Pl.'s Mot. to Amend at 5.) Most recently, the Court dismissed Corizon Health, Inc., Dr. Rickey Coleman, Dr. Ramesh Kilaru, Dr. Lisa Reeves, Physician Assistant Gina Couturier, and Physician Assistant Foster Morris because Plaintiff had failed to exhaust his grievances against them before seeking relief from this Court. *See generally Coleman v. Gullet*, No. 12-10099, 2013 WL 2634851 (E.D. Mich. June 10, 2013).

Six other individuals named in the Complaint, after considerable effort by the Court and the U.S. Marshal's Service, cannot be served: M. Gullet, R.N., "Unidentified Dr.," M. (Mark) Morrisey, Dr. Lambert (or Limbert), Wilcox, N.P., and Dr. Lee. (*See* Dkt. 103, Order Informing Pl. of Status of Unserved Defs.; Dkt. 111, Order Directing Service on Unserved Defs.; Dkt. 112, U.S. Marshal Service Acknowledgment of Service Documents.) In a separate report and recommendation, the Court recommends dismissal of these unserved defendants.

This accounts for nineteen of the original twenty defendants. As to the twentieth, the Court has recommended dismissal of Nikole McLean, also by way of a separate report and recommendation.

### B. Supplemental Allegations[1]

In his two motions to supplement, Plaintiff claims that nine individuals associated with MRF, along with Aetna Life Insurance, have acted, or continue to act, with deliberate indifference to his serious medical needs by refusing to provide "ortho-shoes, insoles, cushions or access to a specialist," "therapy for rehab," or "adequate pain medication." (Dkt. 121, Pl.'s 1st Mot. to Supp. at 1; Dkt. 127, Pl.'s 2d Mot. to Supp. at 1.) Plaintiff identifies these nine individuals as "MDOC RN Tople," Health Unit Manager ("HUM") Nixon, "Corizon Dr. Borgedine," "Corizon Dr. Edelman," "Corizon Dr. Pandaya," "Corizon Dr. Coleman"[2] "MDOC Director Richard Russell," "Corizon [Physician Assistant] Geml," and "Corizon Dr. Abdullateit." (Pl.'s 1st Mot. to Supp. at 2; *see also* Pl.'s 2d Mot. to Supp. at 1.)

### C. Allegations In Support Of Injunctive Relief

In a pair of recent filings, Plaintiff asserts he is in "imminent danger" of going blind and seeks particular medical treatment for his alleged glaucoma. (*See* Dkt. 122, May 2013 Not. of Imminent Danger; Dkt. 125, June 2013 Not. of Imminent Danger.) Given Plaintiff's pro se status, the Court construes these filings as motions to preliminarily enjoin certain MDOC or Corizon

---

[1]The allegations in the Complaint are summarized in *Coleman v. Gullet*, No. 12-10099, 2012 WL 5986779 (E.D. Mich. Sept. 4, 2012) and *Coleman v. Gullet*, No. 12-10099, 2013 WL 2634851 (E.D. Mich. June 10, 2013).

[2]Dr. Rickey Coleman was originally a defendant in this suit but has been dismissed. *Coleman*, 2013 WL 2634851, at *2, 12.

employees associated with MRF from acting with deliberate indifference to his eye condition. The two motions, while they do not attach any records completed by a medical professional demonstrating the need for immediate eye treatment, set forth the following allegations.

In August 2011, Plaintiff began taking Tegretol, a medication that MDOC and/or Corizon employees prescribed for his ankle pain. (Compl. at Pg ID 37.) Plaintiff claims that in September 2011 he began noticing adverse side effects from Tegretol; chief among these was blurred vision. (May 2013 Not. of Imminent Danger at 1.)[3]

Although the record appears incomplete, it does suggest that, for some time at least, Plaintiff continued to take Tegretol despite the alleged side effects. In particular, in June 2012, while Plaintiff was at the Thumb Correctional Facility (*see e.g.*, Dkt. 23), he saw nurse Dorene Smith regarding his ankle pain (Dkt. 128, Pl.'s Reply to Corizon Defs.' Resp. to 1st Mot. to Supp., Ex. B). She provided: "[Coleman] was advised he has the option to refuse medication if it is not helping or he is having side effects. Continues to accept and take the medication. Demanding to see the [Medical Provider]. This is a chronic problem not acute." (*Id.*)

In September 2012 Plaintiff arrived at MRF, and, the next month, he saw a nurse for his eye condition. (Pl.'s 1st Mot. to Supp., Ex. C.) Either at that appointment or sometime in October or November 2012, someone at MRF referred Plaintiff to "Optometry." (*Id.*) A November 2012 MRF grievance response suggests that Plaintiff also stopped taking Tegretol around that time: "It was

---

[3]Plaintiff alleges his blurred vision began in September 2011 and, in doing so, directs the Court's attention to "Exhibit A" attached to his motion. (*See* Dkt. 122, May 2013 Not. of Imminent Danger at 1 & Ex. A.) But Exhibit A, a health care request, appears to have an altered date; it appears backdated from September 2012 to September 2011. (*Id.*, Ex. A.) Further, in May 2012, Plaintiff complained that Tegretol produced a number of side effects, but he did not mention vision problems. (*Id.*, Ex. A at Pg ID 1350.) Ultimately, the onset date discrepancy does not affect the Court's analysis; so the Court will assume that Plaintiff's September 2011 allegation is accurate.

noted grievant wants Ultram, has stopped Tegretol for over two weeks and increased Naprosyn and Tylenol." (1st Mot. to Supp., Ex. C.)

In December 2012, Plaintiff saw the optometrist. (Pl.'s Reply to Corizon Defs.' Resp. to 1st Mot. to Supp., Ex. B ("It can take 2-3 months to see the Optometrist since he only comes 1-2 times per month. You are already scheduled to see the Optometrist the first week of December!"); *see also* May 2013 Not. of Imminent Danger at 1.) The optometrist, whom Plaintiff refers to as "Unknown MRF Eye Doctor" or "Dr. Unknown," allegedly noticed "collateral damage." (*Id.*)

Following this appointment, on December 20, 2012, Plaintiff saw Dr. Rickey Coleman at the Kresge Eye Institute in Detroit, Michigan. (May 2013 Not. of Imminent Danger at 1.) Dr. Coleman allegedly told Plaintiff that there was a "likelihood" of glaucoma and that Tegretol was "at question." (*Id.*) Dr. Coleman explained that Plaintiff should "prepare for many visits in the future" to "attempt to correct or reverse the problems." (*Id.*) The medical specialist ordered "more precise testing." (*Id.*)

On February 4, 2013, Plaintiff was taken to Duane Waters Hospital where an eye doctor ran "a series of tests." (May 2013 Not. of Imminent Danger at 2.) Plaintiff says that the doctor confirmed Dr. Coleman's diagnosis and "showed the plaintiff one of the test results then explained that the [Tegretol] has burned out the nerve endings which is why the plaintiff's eye is sensitive to light, why my vision is [blurred], and extremely darkened, painful, and slightly swollen." (*Id.*)[4]

---

[4]It is unclear whether Plaintiff alleges that the Duane Waters physician made the latter part of this statement ("which is why the plaintiff's eye is . . . .") or whether Plaintiff is simply associating his self-identified symptoms with the physician's diagnosis of damaged nerves. As before, this ambiguity does not affect the Court's analysis, and so the Court therefore assumes that Plaintiff has pled that the Duane Waters physician informed him that Tegretol had caused eye sensitivity, pain, and swelling, as well as blurred and darkened vision.

6

When Plaintiff returned to MRF, however, Dr. Unknown allegedly reviewed Plaintiff's chart and told Plaintiff, "I'll see you in [six] months." (*Id.*) Plaintiff also says that proposed defendants Nixon (the health unit manager) and Richard Russell (MDOC's Regional Director) conspired with Dr. Unknown to schedule the appointment at that time. (*Id.*)

In February and March 2013, Plaintiff made repeated requests to see an eye specialist. (*Id.*) A response to one of Plaintiff's requests informs that Plaintiff was scheduled to see an optometrist at the end of April. (May 2013 Not. of Imminent Danger, Ex. C.) Around that time, Plaintiff apparently again saw Dr. Unknown who, according to Plaintiff, "view[ed] huge [swelling] under plaintiff's left eye, nightly discharge of fluids, and sharp pains including 85% loss of vision." (*Id.* at 2.) Dr. Unknown allegedly told Plaintiff that he would schedule Plaintiff to see an eye specialist. (*Id.*)

According to Plaintiff, however, on May 23, 2013, Dr. Unknown, along with Nixon, told Plaintiff that he would not be going to see a specialist; instead, Plaintiff would see an MRF doctor in four to six months. (*Id.* at 3.) As of May 23, Plaintiff says he has lost "88% to 90%" of his vision in his left eye. (May 2013 Not. of Imminent Danger at 2.)

Plaintiff seeks to enjoin six individuals from continuing to act with deliberate indifference to his glaucoma and deteriorating vision: MDOC Regional Director Russell, Dr. Unknown, HUM Nixon, "Corizon Dr. Borgedine," "Corizon Dr. Edelman," and "Corizon Dr. Pandya" (it is not clear whether Dr. Unknown is in fact one of Borgedine, Edelman, or Pandya). (*See* May 2013 Not. of Imminent Danger at 1, 3; June 2013 Not. of Imminent Danger at 1; Pl.'s 2d Mot. to Supp. at 2.)

None of these six proposed defendants are any of the individuals originally named in this suit. (*See* Dkt. 103, Order Informing Pl. of Status of Unserved Defs. at 1-2.) In fact, as noted, among

7

those defendants that have been served, only McLean remains in this case. Plaintiff has again presented no legal basis for enjoining non-parties. *See Coleman v. Gullet*, No. 12-10099, 2013 WL 2634851, at *15 (E.D. Mich. Feb. 5, 2013) ("This Court lacks jurisdiction to enjoin non-parties."), *report and recommendation adopted*, 2013 WL 2634851 (E.D. Mich. June 10, 2013) (denying preliminary injunction). Accordingly, the Court begins with Plaintiff's motions to supplement.

## II. PLAINTIFF'S MOTIONS TO SUPPLEMENT

### A. Legal Standard

Federal Rule of Civil Procedure 15(d) provides: "On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Therefore, a motion to supplement, as opposed to one to amend, seeks to add allegations pertaining to events arising after the original complaint was filed. *Murphy v. Grenier*, No. 07-15248-DT, 2009 WL 1044832, at *19 (E.D. Mich. Apr. 20, 2009), *aff'd*, 406 F. App'x 972 (6th Cir. 2011). As such, Rule 15(d) contemplates that the supplemental factual allegations may give rise to new legal theories against new defendants. *See Griffin v. Cnty. Sch. Bd. of Prince Edward Cnty.*, 377 U.S. 218, 227 (1964) ("Rule 15(d) . . . plainly permits supplemental amendments to cover events happening after suit, and it follows, of course, that persons participating in these new events may be added if necessary."); *Smith v. Goord*, No. 04-6432, 2006 WL 2850597, at *1 (W.D.N.Y. Sept. 22, 2006), *report and recommendation adopted*, 2007 WL 496371 (W.D.N.Y. Feb. 12, 2007). Further, given that Rule 15(d) covers post-suit conduct, it naturally follows that the supplemental claims need not arise out of the transaction or occurrence that gave rise to the original complaint. *Keith v. Volpe*, 858 F.2d 467, 474 (9th Cir. 1988) ("The absence of a transactional test [from Fed. R. Civ. P. 15(d)],

8

which is an integral part of other Federal Rules of Civil Procedure, *see, e.g.*, Fed. R. Civ. P. 13(a), 14(a), and 20, is a strong indication that this test is not required."); *Hoyt v. Rogers*, No. 10-10262, 2011 WL 940350, at *4 (E.D. Mich. Mar. 16, 2011) ("Events that may be asserted in a supplemental pleading need not arise out of the same transaction or occurrence as the original claim . . . ." (internal quotation marks and citation omitted)).

Still, there must be some connection between the claims as filed and the supplemental ones: "A supplemental pleading cannot be used to introduce a separate, distinct and new cause of action." *Mullen v. Surtshin*, 590 F. Supp. 2d 1233, 1238 (N.D. Cal. 2008). Instead, "[t]here must be some relationship or linkage between the claims asserted in the original complaint and the supplemental claims." *Imelmann v. Michigan Dep't of Corr.*, No. 12-10671, 2012 WL 2917514, at *1 (E.D. Mich. July 17, 2012). Therefore, a court "may deny a motion to supplement when the supplemental pleading could be the subject of a separate action." *Mullen*, 590 F. Supp. 2d at 1238; *see also Deen-Mitchell v. Lappin*, No. 1:11-1902, 2012 WL 74900, at *4 (M.D. Pa. Jan. 10, 2012) ("'[A] court may deny leave to file a supplemental pleading where that pleading relates only indirectly, if at all, to the original complaint and the alleged cause of action arose out [of] an entirely unrelated set of facts . . . .'" (quoting *Nottingham v. Peoria*, 709 F. Supp. 542, 544 (M.D. Pa. 1988))).

Relatedness is not the whole of a court's Rule 15(d) analysis. Supplementation under the Rule is left to a district court's "broad discretion." *Diaz v. City of Inkster*, No. 05-70423, 2006 WL 2192929, at *13 (E.D. Mich. Aug. 2, 2006); *accord Schuckman v. Rubenstein*, 164 F.2d 952, 958 (6th Cir. 1947) ("The granting or refusing of leave to file such a supplemental pleading rests in the discretion of the trial court, and is not reviewable unless there has been a gross abuse of such discretion."). And in exercising its discretion, a trial court should be mindful that supplementation,

like amendment, should be freely granted, but, on the other hand, the non-moving party might be prejudiced by supplementation, adding post-complaint claims may be judicially inefficient, and the supplemental claims may be futile because they fail to state a claim upon which relief may be granted. *See Bromley v. Michigan Educ. Ass'n-NEA*, 178 F.R.D. 148, 153-54 (E.D. Mich. 1998) (listing six factors); *Alverto v. Dep't of Corr.*, No. 11-5572, 2012 WL 1344732, at *1 (W.D. Wash. Apr. 18, 2012) ("In the exercise of its discretion to permit supplemental pleadings, the Court may also consider factors such as judicial efficiency, possible prejudice, or laches.").

### B. Plaintiff's Proposed Glaucoma Treatment Claims Are Not Sufficiently Related to Those of the Complaint[5]

Plaintiff's proposed allegations regarding the treatment for his glaucoma at MRF have little in common with the assertions of the Complaint. The Complaint alleges wrongful conduct at facilities where Plaintiff resided during 2011. The Complaint focuses on Plaintiff's ankle: "[t]he gravaman [*sic*] of my case is that follow-up [surgery] has not been scheduled. Surgery was scheduled, but prior to surgery I was [incarcerated]. There is a broke[n] pin in my foot growing into my bone. I have continually stated a sufficiently serious deprivation that is a condition of urgency . . . ." (Compl. at Pg ID 5.) In contrast, Plaintiff's proposed supplemental allegations involve a prison facility where Plaintiff was transferred to more than a year after the events set forth in the Complaint. And the alleged mistreatment of Plaintiff's eye has almost nothing to do with the alleged mistreatment of his ankle: Plaintiff's claim with respect to his eye is that Dr. Unknown (apparently

---

[5]Plaintiff's two motions to supplement (Dkts. 121, 127) do not contain allegations about the proposed defendants' treatment of his eye condition; instead, those motions focus on the alleged mistreatment of Plaintiff's ankle. Construing Plaintiff's pleadings generously, however, the Court has treated the allegations set forth in his imminent danger motions (Dkts. 122, 125) as part of his basis to supplement.

10

in conjunction with other MDOC or Corizon employees) has refused to send him to an outside eye specialist. Further, none of the six MRF-individuals accused of providing constitutionally inadequate eye care are any of the original defendants. All of this suggests a relationship between the original and supplemental claims that Rule 15(d) does not contemplate. *See Cage v. Harry*, No. 09-512, 2010 WL 1254562, at *1 (W.D. Mich. Mar. 26, 2010) ("The purpose of supplemental pleadings under Rule 15(d) is to allow a plaintiff to update his complaint to add allegations of later events relating to his original complaint. . . . The rule does not, however, allow a plaintiff to add new claims relating to new events at a completely different prison involving not the original defendants but a whole new cast of characters. . . . It does not allow daisy-chaining of unrelated events into a single lawsuit.").

True, Tegretol is a link: it was prescribed for Plaintiff's ankle pain, and Plaintiff now claims that Tegretol caused his glaucoma. Further, Plaintiff has previously accused at least one of the original defendants, Dr. Reeves, of prescribing the "destructive medication" Tegretol "which has caused glaucoma." (Dkt. 89 at Pg ID 859, 879.) But Plaintiff's Complaint never alleged an Eighth Amendment violation for the prescription of Tegretol, it was never amended to include that type of claim, and all of the original defendants, save McLean, have been dismissed from this case. And so, to the extent that one or more of the original defendants' act of prescribing Tegretol connects the original complaint with the proposed claims, that link has been severed. In any event, Plaintiff's proposed supplemental claims do not require proof that Tegretol caused glaucoma: Plaintiff's position is that MRF-associated individuals have provided constitutionally deficient treatment for his eye condition—no matter its cause.

*Womack v. GEO Grp., Inc.*, No. 12-1524-PHX-SRB, 2013 WL 491979 (D. Ariz. Feb. 8, 2013) supports the conclusion that Plaintiff's proposed claims are too unrelated to those in the

complaint to warrant supplementation. There, Womack sued GEO Group, the company operating his correctional facility, for constantly using "four large fluorescent lights" to brightly illuminate his sleeping area. *Id.* at *1. Womack's complaint contended that GEO's conduct amounted to an Eighth Amendment violation because the bright lights caused headaches, sleep disorders, and "rendered him too sleepy and fatigued to participate in basic daily activities." *Id.* About five months after filing suit, Womack attempted to supplement his complaint by asserting that a different corporate entity, Correctional Health Care Corporation ("CHC"), was deliberately indifferent to the "sleep disorders" caused by the constant illumination. *Id.* at *2. More specifically, Womack alleged that CHC prescribed Elavil in a manner that caused side effects, that the side effects forced him to stop taking the medication, and that starting and stopping the medication resulted in "worse headaches and sleep disorders than he ever had before." *Id.*

The *Womack* court concluded that the supplemental allegations were not adequately related for purposes of Rule 15(d): "Plaintiff's supplemental complaint . . . raises an entirely new and different claim against a new defendant, CHC, even though both claims are allegedly based upon violations of Plaintiff's Eighth Amendment rights and generally involve Elavil. . . ." *Id.* at *6. The court continued, "Plaintiff's claim against CHC . . . requires presentation of different witnesses and evidence to establish a prima facie case, and should be set forth in a separate complaint and lawsuit." *Id.* Then, buttressing its relatedness analysis, the court added, "allowing supplementation would not serve the interests of judicial economy, would increase the cost, length, and complexity of this litigation to the GEO Group and the Court by adding a new defendant with a different factual basis for liability and damages . . . ." *Id.*

The disconnect between Plaintiff's proposed supplemental claims and those in his Complaint is even greater than that found problematic by the *Womack* court. In *Womack*, the first defendant allegedly violated Eighth Amendment standards by leaving bright lights on constantly; then, in attempting to treat the harmful effects of that violation, the second defendant also allegedly violated the Eighth Amendment. But here, Plaintiff did not even allege in the original complaint that one of the defendants was deliberately indifferent to the vision side effects of Tegretol in violation of the Eighth Amendment—instead Plaintiff focused on the inadequate care of his ankle.

Other considerations favor denying Plaintiff's request to supplement his Complaint with claims of constitutionally deficient glaucoma treatment. This case has been pending for a year and a half. There has been significant dispositive motion practice. (*See* Dkts. 20, 22, 26, 34, 77, 117.) Indeed, as noted, nineteen of the original twenty defendants to this litigation have been dismissed or cannot be served and the Court has recommended dismissal of the twentieth. Plaintiff has already attempted to appeal the Court's dismissal of certain defendants (Dkt. 132), but he cannot do so until this Court resolves all pending claims and enters final judgment, *see Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 742-45 (1976); *Solomon v. Aetna Life Ins. Co.*, 782 F.2d 58, 60 (6th Cir. 1986). Additionally, because Plaintiff is incarcerated, he is subject to the Prison Litigation Reform Act, including the Act's bar on filing more than three suits that are "frivolous," "malicious," or fail to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). Permitting Plaintiff to use supplementation to restart this case against new individuals could allow Plaintiff to circumvent a litigation strike.

In sum, Plaintiff's supplemental claims have a tenuous relationship with those pled at the outset of this suit. Further, this case has already been heavily litigated. If Judge Goldsmith adopts

this Court's recommendation to dismiss McLean and the unserved Defendants, it will be complete at the trial-court level. Permitting supplementation would essentially restart this case against another ten defendants. This not only delays final resolution of this case for the original Defendants, it delays it for Plaintiff: his right to appeal the Court's resolution of his initially-filed claims is barred until the supplemental claims are fully adjudicated. Granting supplementation in this case would be judicially inefficient. Finally, the Court does not believe that Plaintiff will face procedural hurdles, e.g., a statute of limitations bar, if he were to file a separate suit against the MRF-associated individuals for their allegedly constitutionally deficient eye care. *Alverto v. Dep't of Corr.*, No. C11-5572, 2012 WL 1344732, at *2 (W.D. Wash. Apr. 18, 2012) ("[T]here are no 'technical obstacles' to the Plaintiff bringing a new, separate action to challenge his new claims.").[6] And a separate suit has the potential benefits of simpler case management and of comporting with the purpose of the "three strikes" rule. *See* 28 U.S.C. § 1915(g). For all of these reasons, the Court will deny Plaintiff's motion to supplement his Complaint with allegations based on his glaucoma treatment at MRF. *See Contreraz v. Stockbridge*, No. 1:06-01817, 2012 WL 396503, at *1 (E.D. Cal. Feb. 7, 2012) ("Allowing Plaintiff to [supplement] these separate, distinct, and new claims at this juncture would not serve the interests of judicial economy and convenience, and the proposed claims are simply not sufficiently related to the present claim to support allowing leave to supplement.").

---

[6]In fact, after nearly completing this order and recommendation, the Court discovered that, during the Court's drafting, Plaintiff had filed a separate suit about the medical care he has received at MRF. *Coleman v. Tople*, No. 13-13147 (E.D. Mich. filed July 23, 2013). Filed less than two weeks ago, and not yet with a grant of in forma pauperis, the *Tople* complaint includes allegations about being denied outside access for glaucoma treatment. To the extent that *Tople* does not render Plaintiff's motions to supplement entirely moot, it certainly strengthens this Court's decision to deny supplementation. In other words, in determining whether "the supplemental pleading could be the subject of a separate action," *Mullen*, 590 F. Supp. 2d at 1238, the Court need look no further than the new lawsuit filed by Plaintiff.

14

### C. Plaintiff's Proposed Supplemental Allegations Regarding His Ankle Fail to State a Claim for Relief

As for Plaintiff's proposed supplemental allegations regarding his ankle treatment at MRF, those allegations fail to state a claim upon which relief may be granted. In Plaintiff's first motion to supplement, he asserts that Tople, Nixon, Borgedine, Edelman, Pandya, Coleman, Russell, Geml, Abdullateit, and Aetna Health Insurance have refused to provide "ortho-shoes, insoles, cushions, or access to a specialist, or therapy for rehab, . . . [or] adequate pain medication." (*See* Dkt. 121, Pl.'s 1st Mot. to Supp. at 1-2.) But Plaintiff never says which of these "defendants" engaged in what conduct (or when or why). (*See generally id.*) Conclusorily asserting that a laundry-list of individuals committed a number of wrongful acts, without specifying each individual's particular conduct, does not state a claim pursuant to 42 U.S.C. § 1983. *See Marcilis v. Twp. of Redford*, 693 F.3d 589, 596 (6th Cir. 2012) (finding that complaint failed to state a *Bivens* claim against two federal agents because it referred to all defendants categorically and did not identify the personal involvement of the two agents); *accord Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) ("Given the complaint's use of either the collective term 'Defendants,' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional act they are alleged to have committed."); *Miller v. City of Detroit*, No. 12-10186, 2013 WL 2446129, at *3 (E.D. Mich. June 5, 2013) ("[As in *Marcilis*], the complaint consists almost entirely of generalized allegations against 'defendants' collectively, as opposed to specific allegations as to 'what each defendant did to violate the asserted constitutional right.'"); *cf. Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Plaintiff's second motion to supplement fares no better. There, he conclusorily asserts that seven individuals, Tople, Nixon, Borgedine, Edelman, Pandya, Coleman, and Russell, are all "part of a conspiracy against [his] rights." (Dkt. 127, Pl.'s 2d Mot. to Supp. at 1.) He says that "Dr. Borgedine, Dr. Edelman, Dr. Pandya, Dr. Coleman each are conspir[ing] against my rights[.] [T]here is a smorgasbord of wrong-doings by this health care . . . ." (Pl.'s 2d Mot. to Supp. at 2.) These allegations are too conclusory to plead a conspiracy. *Cf. Lewis-El v. Parker*, No. 11-14472, 2011 WL 5526020, at *2 (E.D. Mich. Nov. 10, 2011) ("To maintain a conspiracy claim under § 1983, a plaintiff must demonstrate: (1) a single plan, (2) that the alleged co-conspirator shared in the general conspiratorial objective, and (3) that an overt act was committed in furtherance of the conspiracy that deprived the plaintiff of his civil rights. . . . To state a conspiracy claim under § 1983, a plaintiff must plead the conspiracy with some specificity. Vague and conclusory allegations unsupported by material facts are insufficient."); *see also Huffer v. Bogen*, 503 F. App'x 455, 461 (6th Cir. 2012) ("Huffer's claim of conspiracy merely described the actions taken by various individual defendants, asserting that their actions were taken in furtherance of a conspiracy. Huffer's claim is conclusory and fails to include allegations regarding an agreement or shared plan between the individual defendants to violate his civil rights.").

Plaintiff's proposed supplemental claim that "M.R.F. employees Tople, Nixon have even [lied] to Warden Dr. Romanowski and said [that] health care has provided ortho-shoes" (Pl.'s 2d Mot. to Supp. at 1 (first brackets in original)) is more specific, but upon close inspection it too falls short.

16

To adequately plead an Eighth Amendment claim of deliberate indifference, Plaintiff must allege that Tople and Nixon's act of lying was harmful enough "to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety . . . ."). Here, giving Plaintiff every benefit of the doubt and absent any counter-argument from MDOC or Corizon, it appears that Plaintiff has adequately pled a serious medical need: an extremely painful ankle that lacks full functioning. It also appears that Plaintiff has adequately pled that Tople and Nixon deliberately denied *particular medical care* for that condition: lying to deprive Plaintiff of orthopedic shoes. Plaintiff's Eighth Amendment claim fails, however, because Plaintiff has put forth nothing, other than his subjective belief, that orthopedic shoes were a necessary or even a beneficial treatment for his ankle condition. It is not obvious to a lay person that this is so. And the Court declines to make such an assumption, especially where a medical professional believes otherwise: "The MSP [Medical Service Provider] has denied your request for shoe and ortho consultation[;] you do not meet the criteria." (Dkt. 128, Pl.'s Reply to Corizon Def.'s Resp. to 1st Mot. to Supp., Ex. B); *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) ("'[F]ederal courts are generally reluctant to second guess medical judgments'" (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976))). Thus, while adequately pleading that Tople and Nixon deliberately denied *one particular treatment* for a serious medical need, that assertion, without more, does not mean that Tople and Nixon were deliberately indifferent to that need. Rather, such a claim is akin to a disagreement with a medical provider's course of treatment, which is generally not cognizable under the Eighth Amendment. *Layne v.*

17

*Vinzant*, 657 F.2d 468, 473 (1st Cir. 1981) ("The right to be free from cruel and unusual punishment does not include the right to the treatment of one's choice."); *Livingston v. Everson*, No. 11-414, 2012 WL 3613292, at *4 (E.D. Ky. Aug. 21, 2012) ("It is well-established that a prisoner cannot show deliberate indifference where he or she is being provided with medical treatment, but the prisoner disagrees with a doctor's reasonable medical judgment regarding the most appropriate course of treatment: a mere difference of opinion concerning the best treatment plan does not indicate deliberate indifference."); *Graham v. Caruso*, No. 10-10467, 2010 WL 3768141, at *2 (E.D. Mich. Sept. 21, 2010) (similar).

In sum, Plaintiff's proposed supplemental allegations about the care he received at MRF for his ankle fail to state a claim upon which relief may be granted. As such, adding those allegations to the Complaint would be futile.

### III. PLAINTIFF'S MOTIONS FOR PRELIMINARY RELIEF

As for Plaintiff's "preliminary injunction" motions (*see* Dkt. 122, May 29, 2013 Not. of Imminent Danger; Dkt. 125, June 13, 2013 Not. of Imminent Danger), the foregoing renders them moot. Because the Court concludes that the MRF-associated individuals who are allegedly acting with deliberate indifference to Plaintiff's eye condition should not be added to this suit pursuant to Rule 15(d), they remain non-parties. And with that status, this Court lacks authority to enjoin their conduct. *See Coleman v. Gullet*, No. 12-10099, 2013 WL 2634851, at *15 (E.D. Mich. June 10, 2013).

**IV. ORDER AND RECOMMENDATION**

For the reasons given, IT IS HEREBY ORDERED that Plaintiff's "Motion to Supplement[] New Defendants to Current 12-10099 [F]ederal [S]uit [Fed. R. Civ. P 15d]" (Dkt. 121) and "Request[] to Supplement [Fed. R. Civ. P. 15d] the Following Corizon and M.D.O.C. and Named Physicians" (Dkt. 127) are DENIED.

It follows that this Court RECOMMENDS that Plaintiff's two "imminent danger" motions, "Under Imminent Danger" (Dkt. 122) and "Imminent Danger 28 U.S.C. § 1915(g)" (Dkt. 125), should be DENIED.

**V. FILING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be

19

filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

                                                            s/Laurie J. Michelson
                                                            LAURIE J. MICHELSON
                                                            UNITED STATES MAGISTRATE JUDGE

Dated: August 6, 2013

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 6, 2013.

                                                            s/Jane Johnson
                                                            Deputy Clerk